UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER STRICKLAND, | ) | |
| Plaintiff, | ) ) | No. 3:13-cv-01085 |
| | ) | Senior Judge Haynes |
| v. | ) ) | |
| MERCK & CO., INC., and MERCK & CO., INC., MEDICAL, DENTAL, AND LONG TERM DISABILITY PROGRAM FOR NON-UNION EMPLOYEES | ) ) ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM**

Plaintiff, Christopher Strickland, filed this action under the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132, against the Defendants, Merck & Co., Inc., his former employer, and Merck & Co., Inc., Medical, Dental, and Long Term Disability Program for Non-Union Employees (collectively, "Merck"), the Administrator of Plaintiff's employee benefit plan. Plaintiff seeks judicial review of the Defendant's denial of continuation of long term disability benefits under insurance policies issued to Plaintiff's former employer. The Defendant filed the Administrative Record of its reviews of Plaintiff's disability claims. (Docket Entry No. 13).

Both parties have moved for judgment in their favor. In his motion for judgment on the pleadings (Docket Entry No. 17), Plaintiff contends, in sum: (1) that Plaintiff is totally disabled under the terms of the policy; (2) that Defendant's reliance upon the opinions of non-examining file reviewers is inadequate to provide a reasoned explanation for its decision to deny disability

benefits; and (3) that Defendant's failure to consider the impact of pain and pain medications on Plaintiff's ability to work is arbitrary. In its motion for judgment on the administrative record (Docket Entry No. 15), the Defendant contends, in essence, that its decision denying benefits was rational in light of the plan provisions and was supported by substantial evidence.

For the reasons set forth below, the Court concludes that Defendant's decision to deny continuation of long term disability benefits under the Plan was based upon Plaintiff's medical records, the diagnoses of Plaintiff's treating physician, and records reviews by two consultants. Thus, the Defendant's decisions were not arbitrary and capricious.

## A. Review of the Record

### 1. Procedural History

Merck & Co., Inc. ("Merck") is the plan sponsor and plan administrator of the Merck & Co., Inc., Medical, Dental and Long-Term Disability Program for Non-Union Employees. (Docket Entry No. 5, Complaint at 5). Merck's Plan is an employee benefit plan covered by ERISA. Id. at 7. Plaintiff worked for Defendant as a pharmaceutical salesman. Id. at 8. In the course of his employment, Plaintiff injured his back and shoulder while lifting a box. Plaintiff applied for long term disability (LTD) benefits from Merck's Plan, and began receiving benefits on October 2, 2008. Id. at 13.

According to the terms of the Plan, after 24 consecutive months of benefits, the terms change to require the employee to be "unable to engage in any Gainful Employment for which [employee is] or may become reasonably qualified by education, training, or experience." (Docket No. 13, Administrative Record at 758). Under this definition, Plaintiff's benefits were terminated on October 2, 2010. (Docket Entry No. 5, Complaint at 14). Plaintiff appealed the

termination administratively, then sought judicial review. Id. at 15-16. The parties reached a settlement, in which Plaintiff was paid accrued benefits through February 28, 2011 and the proceeding was remanded to the Plan to consider benefits after February 28, 2011. Id. at 17. The Plan denied benefits after February 28, 2011, and Plaintiff has pursued administrative remedies, and then this action. Id. at 17, 20-22.

### 2. Medical History

The definition of total disability under which Plaintiff's application was considered reads:

Totally Disabled (or "Total Disability"). Totally Disabled means you are unable to perform all material aspects of your occupation during the Eligibility Period and during the first 24 consecutive months that benefits are paid under the Long-Term Disability Plan. After the first 24 consecutive months of disability, you must be unable to engage in any Gainful Employment for which you are or may become reasonably qualified by education, training or experience.

"Gainful Employment" is defined as:

Gainful Employment means compensation (either wages, commissions, earnings, profits or otherwise) for services that would replace at least 60% of your Base Pay prior to your disability in a job that is reasonably available, within up to 75 miles. (The area may be less, depending upon the facts surrounding your disability and the location of your residence when you became disabled.) A job is reasonably available if an opening exists or the job is being performed within that geographic area, even if there is no current opening.

(Docket No. 13, Administrative Record at 758).

Plaintiff's treating physician is Dr. T. Scott Baker, a pain management specialist. Id. at 227, 513. Dr. Baker has been treating Plaintiff since at least March 2010. Id. at 3. Plaintiff underwent surgery for his shoulder injury in December 2010. In Dr. Baker's February 15, 2011 report, he indicated that Plaintiff's pain rated 7/10, and that "he is on COBRA Insurance and requesting to decrease meds." Id. at 376. In March 2011, Plaintiff reported that "4 out of 7 days

3

[he] wakes up with a stabbing pain that he can not 'walk off'." Id. at 371. Dr. Baker also noted that Plaintiff had been referred to a rheumatologist. Id. In May 2011, Dr. Baker noted that "[Plaintiff] reports that his pain is inadequately controlled. He reports that his condition is unchanged." Id. at 353. On November 2, 2011, the rheumatologist reported "diffuse pains are still overall better presently mostly low back, shoulders and, and neck (sic). Most pains are areas of trauma." Id. at 454.

In June 2012, Dr. Baker noted that Plaintiff "reports that his condition is unchanged," but also that "overall he is doing well." Id. at 295-96. Still, on that visit Dr. Baker prescribed six medications, including two opioids. Id. In July 2012, Plaintiff reported a pain level of 5/10, and 5/5 performance in his shoulder and hip joints to Curry Dudley, a Certified Family Nurse Practitioner. Id. at 293. On August 28, 2012, Plaintiff "returned scripts for Celebrex and Zanaflex stating he did not need them this month." Id. at 279. Celebrex a non-steroid anti-inflammatory medication that Plaintiff had been prescribed, and Zanaflex is a muscle relaxer. On September 18, 2012, Plaintiff again reported a pain level of 5/10, but also that "he has pain 90 percent of the time that he is awake." Id. at 270. Dr. Baker's note also states, "the treatments which are effective include: none." Id.

On January 15, 2013 and February 12, 2013, Dr. Baker noted that Plaintiff reported pain levels of 7/10, pain 90% of the time he is awake, and an unchanged condition. Id. at 240, 468. On February 14, 2013, Plaintiff was examined by Dr. Lonergan, at the Pain Center. Id. at 201. Dr. Lonergan's report states: "The pain score today is 8. The average pain score for the last 3 months is said to be 6. During a 24 hour period, the patient needs to take medication for pain 7 times." Id.

4

### 3. LTD Eligibility Reports

On September 28, 2012, Dr. Baker completed a Medical Opinion Form at Merck's request. Id. at 451. Dr. Baker indicated that Plaintiff could sit for 6 hours a day, 30 minutes at a time, and stand for 2 hours a day, 30 minutes at a time. Id. Dr. Baker also stated that Plaintiff would not require more than one 30 minute and two 15 minute breaks in a workday. Id. These constraints do not produce a full workday.

On January 31, 2013, Merck sent a letter to Dr. Baker's office, stating, "[w]e are reviewing the Long Term Disability (LTD) claim for your patient Christopher Strickland ... In order to review your patient's eligibility for LTD benefits, we will need the following dating from September 1, 2012 through present." Id. at 474. The letter then included a list of questions, one of which was "[a]re you currently keeping this patient out of work?" Id. Dr. Baker answered this question "NO," but Dr. Baker did not sign this response. Id. Merck's letter requested a return of the response by February 7, 2013, but the response is dated February 21, 2013. Id.

On February 8, 2013 – the day after Merck requested a response from Dr. Baker – Merck sent another copy of the letter. Id. at 218. In this response, the question "[a]re you currently keeping this patient out of work?" is answered "yes." Id. Dr. Baker also answered "yes" to "[a]re you restricting your patient from performing full time sedentary work at this time?" and [a]re you restricting your patient from performing full time light work at this time?" Id. Dr. Baker then signed this response, dated March 8, 2013.

### 4. Peer Review

On March 11, 2013, Dr. Donald Minteer, a Merck consultant, reviewed Plaintiff's file. Id. at 222-23. Dr. Minteer's report is two pages long, and was "reviewed in accordance with the

DMS Expert Resource Professional Conduct Statement. All available medical and/or vocational evidence bearing on Disability and/or functional capacity and its impact on the whole person has been considered in order to provide an accurate representation of the medical and/or vocational facts of the claim file," including Dr. Baker's notes from the February 13, 2013 visit. Id. Dr. Minteer concluded that "[w]ithin a reasonable degree of medical certainty, it is my professional opinion that there are no objective clinical exam, clinical testing or imaging documentation to support a significant physical functional impairment which would preclude at least a sedentary level occupation." Id. The bases for Dr. Minteer's conclusion were as follows:

> 1. The clinical exam notes of Dr. Baker show consistent findings of normal motor strength, heel and toe walking and squatting. The findings are inconsistent for SLR testing which are intermittently noted as positive and can very (sic) from normal to positive on the left side to positive bilaterally. No abnormal sensory changes are noted.
>
> 2. Per the 2/13/13 office note of Dr. Baker, there is notation of new complaints of knee, wrist, and elbow discomfort. Other than subjective tenderness on palpation of these areas as well as the paraspinal areas of the neck, thoracic spine area and the lumbar area, no other abnormalities such as synovitis, swelling or erythma are noted. No rheumatological studies are ordered.
>
> 3. There are no abnormal electrodiagnostic studies to support either a cervical or lumbar radiculopathy.

Id.

In a March 19, 2013 letter, Merck denied Plaintiff's application for continuation of his LTD benefits after February 28, 2011. Id. at 113-115. Merck's letter stated, "following review of your claim, it was determined you are able to perform the duties of a sedentary level occupation and no longer meet the definition of disability beyond March 1, 2011." This letter notes Plaintiff's February 12, 2013 office visit to Dr. Baker, but does not mention Dr. Minteer's review on March 11, 2013.

Plaintiff administratively appealed this denial, and on September 11, 2013, received a second denial letter. Id. at 116-119. Merck's second letter stated, "[a]fter completing our review of Mr. Strickland's claim, we are unable to continue paying benefits beyond February 28, 2011." Id. This denial was based upon the information cited in the original March 19, 2013 denial, as well as February 2013 progress notes from Dr. Baker and the initial consultation at the Pain Center. This appeal included the report of Dr. Siva Ayyar, an "independent peer reviewer." Id. at 175-179.

Dr. Ayyar's report was dated September 5, 2013; in it, he references an initial review conducted on August 8, 2013. Id. Dr. Ayyar concluded that Plaintiff would be "functionally limited," but that he would not be unable to work in any capacity. Id. Dr. Ayyar's report lists the question, "[d]oes review of the additional information alter your previous opinion? Please explain" to which Dr. Ayyar answered, "[t]he previous opinion is unaltered." Id. After listing limitations for Plaintiff, Dr. Ayyar concluded: "I feel that these limitations are more an accurate characterization of the clinical picture than the proclamation of the total inability to work put forth by Dr. Baker." Id.

## B. Conclusions of Law

Under ERISA, review of denial of benefits is subject to a "de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Firestone Tire Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Here, the Plan grants the Plan Administrator discretion to determine eligibility for benefits in accordance with the Plan Documents.

**Plan Administrator / Claims Administrator**

The Plan Administrator has the exclusive discretion to construe and interpret the terms of the LTD Plan as follows:

- To make factual determinations, interpret and construe the Plan, correct defects, supply omissions and reconcile inconsistencies to the extent necessary to effectuate the Plan, resolve all questions arising in the administration, interpretation and application of the Plan, and such action will be conclusive upon the Company, the Plan, participants, employees, their dependents and beneficiaries;
- To decide all questions of eligibility and participation

(Docket Entry No. 13, Administrative Record at 790-791).

This language grants discretionary authority to Defendant to determine eligibility and construe the terms of the plan. Bagsby v. Central States, Southeast & Southwest Areas Pension Fund, 162 F.3d 424 (6th Cir. 1998) (applying the arbitrary and capricious standard where the plan granted "discretionary and final authority" to the trustees). Accordingly, the Court concludes that the arbitrary and capricious standard of review applies here.

The arbitrary and capricious standard of review is "the least demanding form of judicial review." Smith v. Continental Cas. Co., 450 F.3d 253, 259 (6th Cir. 2006) (quoting Williams v. Int'l Paper Co., 227 F.3d 706, 712 (6th Cir. 2000)). "[T]hough the standard is not without some teeth, it is not all teeth. An 'extremely deferential review,' to be true to its purpose, must actually honor an 'extreme' level of 'deference' to the administrative decision." McClain v. Eaton Corp. Disability Plan, 740 F.3d 1059 (6th Cir. 2014).

Under an arbitrary and capricious standard of review, the question is "whether the plan administrator's decision was 'rational in light of the plan's provisions.'" Smith v. Ameritech, 129 F.3d 857, 863 (6th Cir. 1997) (quoting Daniel v. Eaton Corp., 839 F.2d 263, 267 (6th Cir.

8

1988)). "A decision is not arbitrary and capricious if it is based on a reasonable interpretation of the plan." Shelby County Health Care Corp. v. Southern Council of Indus. Workers, 203 F.3d 926 (6th Cir. 2000). A reasonable interpretation of the plan requires the plan administrator to "adhere to the plain meaning of its language, as it would be construed by an ordinary person." Id.

When the plan administrator and the insurer are one, as here with Merck, "a conflict of interest clearly is apparent." Gismondi v. United Technologies Corp., 408 F.3d 295, 299 (6th Cir. 2005). This conflict is a "factor in determining whether there is an abuse of discretion." Id. (quoting Firestone Tire, 489 U.S. at 115). "This conflict of interest does not displace the arbitrary and capricious standard of review; rather, it is a factor that we must consider when determining whether the administrator's decision to deny benefits was arbitrary and capricious." Evans v. UnumProvident Corp., 434 F.3d 866 (6th Cir. 2006). "The reviewing court looks to see if there is evidence that the conflict in any way influenced the plan administrator's decision." Id. (citing Carr v. Reliance Standard Life Ins. Co., 363 F.3d 604, 606 n. 2 (6th Cir. 2004)).

Plaintiff contends that the record review conducted by Merck's consultant is not a "reasoned explanation" for denial of benefits. Neither Dr. Minteer nor Dr. Ayyar examined Plaintiff, and both conducted only file reviews. In the Sixth Circuit, there is "nothing inherently objectionable about a file review by a qualified physician in the context of a benefits determination." Calvert v. Firstar Fin., Inc., 409 F.3d 286, 296 (6th Cir.2005). Yet, the fact that a records review was used rather than a physical examination "is a factor to be considered in reviewing the propriety of an administrator's decision regarding benefits." Evans, 434 F.3d at 877. See also Kalish v. Liberty Mutual, 419 F.3d 501, 508 (6th Cir. 2005) ("Whether a doctor has

physically examined the claimant is indeed one factor that we may consider in determining whether a plan administrator acted arbitrarily and capriciously in giving greater weight to the opinion of its consulting physician.").

Plaintiff asserts that Dr. Baker, his treating physician, has consistently refused to authorize him for work, has recorded his high pain levels since March 2011, and that Dr. Baker's restrictions and limitations are sufficient to support a claim of total disability. (Docket No. 18 at 4). Yet, the record reflects Dr. Baker did release Plaintiff to work. (Docket No. 13, Administrative Record at 474-77). On February 21, 2013, in response to Merck's first letter regarding Plaintiff, Dr. Baker answered "NO" to the question "[a]re you currently keeping this patient out of work?" This response is not signed by Dr. Baker. Dr. Baker's next response, dated March 8, 2013, answered the question "[a]re you currently keeping this patient out of work?" "yes," and opined that Plaintiff could not perform any light work or any sedentary work. Id. at 218-20. Because these conflicting reports were issued within weeks of each other, the Defendant was entitled to assign them little weight.

Plaintiff argues that reliance upon Merck's reviewers, who did not examine Plaintiff, does not establish a "reasoned explanation" for denial of benefits. Where there are conflicting opinions of treating and consulting physicians in an ERISA action, deference to the treating physician is not mandatory:

> "[C]ourts have no warrant to require administrators automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.
>
> "The Supreme Court nonetheless admonished that '[p]lan administrators ... may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a

10

treating physician.'"

Evans, 434 F.3d at 877 (citing Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003).)

Although Defendant has concluded that Plaintiff is able to return to work, this does not establish that Defendant "arbitrarily refuse[d] to credit" Dr. Baker's opinion. Defendant's first consultant, Dr. Minteer, reviewed Dr. Baker's examination notes, and disagreed with his conclusions. Dr. Minteer observed, "[t]he clinical exam notes of Dr. Baker show consistent findings of normal motor strength, heel and toe walking and squatting," that is accurate according to the record. Dr. Minteer also stated, "no other abnormalities such as synovitis, swelling or erythma (sic) are noted." Dr. Minteer concluded that "there are no objective clinical exam, clinical testing or imaging documentation to support a significant physical functional impairment which would preclude at least a sedentary level occupation." Id. at 223.

Dr. Ayyar, Defendant's second peer reviewer, reviewed 16 pages of records, including Dr. Baker's examination notes, for his conclusion. Id. at 175-79. Dr. Ayyar credited Dr. Baker's opinion to a greater extent than Dr. Minteer. Dr. Ayyar concluded that Plaintiff "does have chronic issues with neck pain, shoulder pain and multifocal pain syndrome/fibromyalgia, which are limiting and impeding his ability to lift, carry, push, pull, stand, walk, kneel, bend, squat, and stoop." Id. Dr. Ayyar adopted Dr. Baker's conclusions, but found Dr. Baker's work restrictions inconsistent with a complete inability to work. Id. Dr. Ayyar's reasoned explanation is based on evidence that Plaintiff is able to work in any capacity.

In such instances, the Defendant's decision is neither arbitrary or capricious:

Generally, when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to

> ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision.

McDonald v. Western-Southern Life Ins. Co., 347 F.3d 161, 169 (6th Cir. 2003).

Plaintiff next asserts that the Defendant's consultants' conclusions are unreasonable because the consultants did not account for Plaintiff's pain and pain medication. Plaintiff consistently rated his pain at or above 5/10, and in the months before his benefits were denied, Plaintiff reported pain ninety percent of the time he was awake. In his September 28, 2012 Medical Opinion Form submitted to Merck, Dr. Baker noted "the pain reasonably suffered by [Plaintiff]" as "severe" and answered "yes" to whether Plaintiff's "pain, medical condition, or medication would cause lapses in concentration or memory on a regular basis to the extent that [Plaintiff] could not attend to a task or be reliable in following work instructions," and opined that these lapses would occur "several hours 3 or more days a week." Id. at 675-76. Yet Dr. Ayyar's diagnoses cited Plaintiff's "chronic issues of neck pain, shoulder pain and multifocal pain syndrome/fibromyalgia" and "chronic low back pain." Id. at 175-76. In addition, Dr. Minteer cited instances of Plaintiff's pain on July 3, 2012, December 18, 2012, and on February 12, 2013, when Dr. Minteer summarized "bilateral knee, wrist, and right elbow pain," "pain at bilateral shoulders, elbows, and wrists," and "bilateral knee crepitus and pain." Id. at 040-041. These reviews reflect that Defendant's consultants accounted for Plaintiff's chronic pain in their conclusions.

As to Plaintiff's medications or the potential side effects, Dr. Baker's progress note forms do not mention pain medication as a concern. In responding to Merck's pre-printed questionnaires, Dr. Baker never responded that Plaintiff's pain medication was an issue. In

answering whether "pain, medical condition, or medication would cause lapses in concentration or memory on a regular basis to the extent that [Plaintiff] could not attend to a task or be reliable in following work instructions," Dr. Baker did not circle or otherwise emphasize which of these issues might causes lapses – the pain, or the medication. In his September 5, 2013, Dr. Ayyar observed that "In a handwritten response dated 08/25/2013, Dr. Baker, the claimant's attending provider, states that the claimant is being considered for multilevel fusion surgery. It is unclear whether this is being contemplated about the cervical spine or the lumbar spine. Dr. Baker states that he disagrees with the limitations I have suggested." Id. at 175. Plaintiff does not identify any doctor who has determined that his need for pain medication alone renders Plaintiff unable to work in any capacity. Dr. Baker did not send any letter to the Defendant's reviewers on Plaintiff's pain medication.

For these reasons, the Court concludes that Defendant's motion for judgment on the record (Docket No. 15) should be granted and Plaintiff's motion for judgment on the pleadings (Docket No. 17) should be denied.

An appropriate Order is filed herewith.

ENTERED this the 23nd day of March, 2015.

WILLIAM J. HAYNES, JR.
Senior United States District Judge